769 A.2d 449

**Gerald J. LaVALLE and Richard A. Kasunic, Individually and in their Capacities as Elected Members of the Senate of the General Assembly of Pennsylvania, Appellants,**

v.

**OFFICE OF GENERAL COUNSEL OF THE COMMONWEALTH of Pennsylvania, Appellee.**

Supreme Court of Pennsylvania.

Submitted Oct. 26, 2000.

Decided April 20, 2001.

484

Jeff Foreman, Harrisburg, for LaValle & Kasunic, Elected Members of the Senate of Pa.

Brian P. Gottlieb, for Amicus–PA Newspaper Assn.

Roger E. Grimaldi, Sandra W. Stoner, Anthony S. Potter, James M. Sheehan, Harrisburg, for Commonwealth of Pennsylvania.

Before: FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION

SAYLOR, Justice.

This appeal concerns a request for access to a document pursuant to the Right to Know Act, lodged with the Office of General Counsel by two members of the Pennsylvania General Assembly.

In December, 1997, and February, 1998, the Honorable Gerald J. LaValle, a member of the Senate of Pennsylvania, directed several letters to the Office of General Counsel ("OGC") seeking access to a report that had been prepared by Ernst & Young LLP, an accounting consultant to the Commonwealth, Department of Transportation ("PennDOT"). Ernst & Young had been retained in connection with litigation commenced against the Commonwealth by Envirotest Partners ("Envirotest"). In this litigation, Envirotest had alleged that, by abandoning a large-scale, centralized automotive emissions testing program, PennDOT breached a government contract providing for Envirotest's administration of such program; in settlement of this action, the Commonwealth ultimately had paid in excess of $145 million to Envirotest. Apparently having received no response to his prior correspondence, on February 18, 1998, Senator LaValle and several other members of the Senate (including the Honorable Rich-

ard A. Kasunic) forwarded a letter to OGC stating an intention to commence a formal proceeding pursuant to Pennsylvania's Right to Know Act.[1] OGC then provided the Senators with a written refusal of their request, explaining that the Ernst & Young report was prepared to assist it and PennDOT in assessing and defending the Envirotest litigation, and that the report was not an audit. Providing no further description of the contents of the report,[2] OGC took the position that the document was protected under the work product doctrine and therefore was not within the categories of the records subject to mandatory public access under the Act. Alternatively, OGC indicated that if the document was within the general scope of public records under the Act, it was within a statutory "investigations" exception to the requirement of disclosure.

On appeal, in a divided opinion, the Commonwealth Court affirmed OGC's decision to deny the Senators' request for disclosure pursuant to the Act. *See LaValle v. Office of General Counsel,* 737 A.2d 330 (Pa.Cmwlth.1999). The majority explained that the Act provides for public access to certain "public records,"[3] which are divided into two definitional categories: an accounts/vouchers/contracts category;[4] and a minutes/orders/decisions category,[5] the former of which was

1. Act of June 21, 1957, P.L. 390 (as amended, 65 P.S. §§ 66.1–66.4)(the "Act").

2. OGC did indicate that the report "contains no information that is necessary to determine the cost to the taxpayers in total [of the Envirotest settlement], or with regard to the final payment." This was in response to the Senators' assertion to the contrary and was supported by the fact that the face amount of the settlement and, correspondingly, the cost to taxpayers, was a matter of public record.

3. Specifically, Section 2 of the Act provides generally that "[e]very public record of an agency shall at reasonable times, be open for examination and inspection by any citizen of the Commonwealth of Pennsylvania." 65 P.S. § 66.2.

4. As noted by the Commonwealth Court, this category consists of "[a]ny account, voucher or contract dealing with the receipt or disbursement of funds by an agency or its acquisition, use or disposal of services or of supplies, materials, equipment or other property." 65 P.S. § 66.1(2).

5. This category consists of "any minute, order or decision by an agency fixing the personal or property rights, privileges, immunities, duties or obligations of any person or group of persons." 65 P.S. § 66.1(2).

most directly pertinent to the question before the court. The Commonwealth Court majority then reviewed this Court's decision in *Sapp Roofing Co. v. Sheet Metal Workers' Int'l*, 552 Pa. 105, 713 A.2d 627 (1998)(plurality opinion), and portions of the discussion from *North Hills News Record v. McCandless*, 555 Pa. 51, 722 A.2d 1037 (1999). The majority noted that, in *Sapp Roofing*, a plurality of this Court concluded that a private contractor's payroll records in the possession of a school district, which records were related to work performed pursuant to a contract with the district, constituted public records within the accounts/vouchers/contracts category.[6] The majority then quoted from *McCandless* the following assessment of *Sapp Roofing*:

> "Implicit in the Court's decision in *Sapp Roofing* is the conclusion that the accounts/vouchers/contracts category of public records reaches some range of records beyond those which on their face constitute actual accounts, vouchers or contracts. Nevertheless, it is clear from *Sapp Roofing* that, to constitute a public record, the material at issue must bear a sufficient connection to fiscally related accounts, vouchers or contracts."

*LaValle*, 737 A.2d at 332 (quoting *McCandless*, 555 Pa. at 55, 722 A.2d at 1039). The Commonwealth Court majority observed that *Sapp Roofing*, as reflected in *McCandless*, provided a more expansive interpretation of the accounts/vouchers/contracts category of public records than did its prior opinions, and it therefore took the opportunity to specifically overrule its prior precedent. *See LaValle*, 737 A.2d at 332 (overruling *Butera v. Office of the Budget*, 29 Pa.Cmwlth. 343, 370 A.2d 1248 (1977)).

Nevertheless, the majority noted that the Ernst & Young report would not comport with its prior interpretation of the

6. In actuality, as noted in *McCandless*, 555 Pa. at 55 n. 2, 722 A.2d at 1038 n. 2, a majority of the five Justices participating in *Sapp Roofing* determined that the payroll records were public records pursuant to the Act. The lead opinion, authored by Mr. Justice Castille, was joined by Mr. Chief Justice Flaherty, and Mr. Justice Zappala authored a concurring opinion agreeing with this central conclusion. *See Sapp Roofing*, 552 Pa. at 112–13, 713 A.2d at 630 (Zappala, J., concurring).

accounts/vouchers/contracts category, since it did not reflect any actual disbursement of funds by the Commonwealth, but was commissioned for the express purpose of determining the extent of Envirotest's damages. Because, however, this Court had indicated that the accounts/vouchers/contracts category "reaches some range of records beyond those which on their face constitute actual accounts, vouchers or contracts," *McCandless*, 555 Pa. at 55, 722 A.2d at 1039, the Commonwealth Court majority stated that the report might nonetheless constitute a public record under the Act. In this regard, the majority noted that "the Ernst & Young report was an audit [7] of the materials submitted to the Commonwealth by Envirotest requesting payment for breach of contract[;][i]t was, therefore, in some ways similar to the private contractor's payroll records at issue in *Sapp Roofing*." *LaValle*, 737 A.2d at 332. The majority, however, engaged in no further examination of the record concerning the relationship between the report and fiscally-related accounts.

Instead, the Commonwealth Court majority effectively prescribed a separate prerequisite to qualification of materials as "public records" which it derived from *Sapp Roofing*, namely, a requirement that the records be essential to the performance of a mandatory statutory duty. The majority reasoned:

> In *Sapp Roofing*, regulations implementing the Prevailing Wage Act required the agency to ensure that all wages due to workers by the contractor were paid, and to withhold the amount of unpaid wages from disbursements to the contractor. Thus, the private contractor's records were an "essential component" of the agency's decision, since a mandatory statutory duty could be performed only after a review of those records. In the present case, the Ernst & Young audit was not required by statute or regulation, and the Office of General Counsel was not obliged to act in any way upon the audit. Accordingly, we conclude that the audit, while tangentially relating to disbursements by the Com-

7. As further discussed below, *see infra* note 13, the Commonwealth Court's characterization of the report as an "audit" contradicts OGC's representation in its denial letter to the effect that the report is *"not* an audit" (emphasis in original).

monwealth, was not an "essential component" of the decision to pay Envirotest and, as such, is not a "public record" under the Right–to–Know Act.

*LaValle,* 737 A.2d at 333.

In a concurring and dissenting opinion, Judge Kelley, joined by Judge Friedman, disagreed with the conclusion that the Ernst & Young report was not a public record under the Act. *See LaValle,* 737 A.2d at 333–35 (Kelley, J., concurring and dissenting). Judge Kelley stated that OGC admittedly relied upon the report to determine the extent of Envirotest's damages and that, in effect, "the report was a justification for . . . the decision to pay Envirotest approximately $145 million plus interest from public funds." *Id.* at 333. In support of this conclusion, Judge Kelley noted that the Ernst & Young report had been referenced by various legislators in addressing inquiries concerning the basis for the Envirotest settlement. In these circumstances, Judge Kelley found it clear that the report was an "essential component" of the decision to pay Envirotest. Further, Judge Kelley stated:

There is an inherent responsibility of disclosure and the absolute duty of cooperation between the branches when inquiry is made by any member of the General Assembly with respect to obtaining a justification for the expenditure of public funds. When such an inquiry is made, it is mandatory for disclosure to occur. The Office of General Counsel, Executive Branch, is constitutionally obligated by implication to disclose the basis of the justification for any financial amounts requested from the General Assembly. Notwithstanding a separate public contract with Envirotest, the report is a part of the justification for the requested amount. This essential information must be provided to the General Assembly as the body authorizing the expenditure of the public funds. Otherwise, by withholding justifying reports from the knowledge of the other branch which of necessity must authorize such money, we would be permitting one branch to act in total or partial ignorance when voting which needless to say would subvert our representative form of government.

*LaValle*, 737 A.2d at 335 (Kelley, J., concurring and dissenting).

We allowed appeal to determine whether the Ernst & Young report is a public record under the Act.

█ As a threshold matter, we review the requirement, prescribed by the Commonwealth Court majority, that a document must contain information essential to the performance of a mandatory, statutory duty in order to qualify as a public record pursuant to the Act, as well as the corresponding conclusion that the Ernst & Young report is not a public record, since the Senators failed to identify the requisite mandatory duty vested in PennDOT which could be performed only upon review of the report. Although the majority referred to *Sapp Roofing* in developing this requirement of a mandate, *Sapp Roofing*'s lead opinion imposed no such condition as a prerequisite to qualification as a public record. To the contrary, the lead opinion quickly concluded that the payroll records at issue were public records under the Act, because they evidenced a disbursement by a governmental entity. *See Sapp Roofing*, 552 Pa. at 109, 713 A.2d at 629. To the extent that the lead opinion considered the submission of the payroll records in furtherance of the Commonwealth's mandatory duty to ensure the payment of workmens' wages by its contractors, this discussion proceeded not as an assessment of whether the documents were public records, but rather, as a component of the separate, elemental inquiry into whether the documents were records "of the agency." *See* 65 P.S. § 66.2 (establishing the right of public access with respect to public records "*of an agency*" (emphasis added)). *See generally Sapp Roofing*, 552 Pa. at 109, 713 A.2d at 629 (noting that, pursuant to the Act, to be available for inspection, records must be *both* public records *and* records of an agency).[8] Nor did Mr. Justice Zappala, in his concurring

---

**8.** Whether the payroll records at issue in *Sapp Roofing* were government records at all was obviously in question because they had been prepared by a private contractor. Significantly, in the present case, OGC does not contest that the Ernst & Young report is a record "of the agency," nor would it appear that it could credibly do so, as the report was apparently commissioned and paid for by PennDOT. Therefore,

opinion, rely upon a requirement of a mandate in support of his determination that the payroll records were public records; indeed, to the contrary, the concurring opinion emphasized the view that there is no mandatory requirement for a government contractor to submit its payroll records to the public body. *See Sapp Roofing,* 552 Pa. at 112–13, 713 A.2d at 630–31 (Zappala, J., concurring).

As noted, the Commonwealth Court's fashioning of this requirement of a mandate was preceded by its observation that the definition afforded by this Court to the accounts/vouchers/contracts category of public records is broader than that previously ascribed by the Commonwealth Court. It thus appears that the requirement may represent the court's effort to narrow the class of records falling within the accounts/vouchers/contracts category, while facially implementing the interpretation prescribed by this Court. Certainly our decisions in *Sapp Roofing* and *McCandless* did not fully delineate all appropriate boundaries to the definition of public records. Rather, they dealt with the facts at hand, leaving intact most of the Commonwealth Court's existing overlay of decisional law, as well as the opportunity for further development in the context of particular fact patterns as they might arise. *See id.* But limitations which further shape the definition's practical application must be founded on principles of statutory construction, implementing the intent of the General Assembly by reference to the terms of the Act and, where and to the extent appropriate, the policies underlying it. Other than its reliance upon *Sapp Roofing,* the Commonwealth Court majority provided no explanation for its requirement of

the portion of *Sapp Roofing* referred to by the Commonwealth Court majority is irrelevant to the issues presented in this appeal.

Parenthetically, we note that the approach taken by *Sapp Roofing*'s lead opinion to determining whether a record is "of the agency" is not an exclusive analysis, as, for example, records prepared and maintained by an agency in the ordinary course of its activities would generally satisfy the "of the agency" requirement as well, whether or not they would constitute an essential component of a decision or otherwise qualify as a public record pursuant to the Act. To the extent that the lead opinion in *Sapp Roofing* can be read to suggest otherwise, we take this opportunity to clarify it.

a mandate on such terms. We therefore reject this requirement, as the Act simply does not distinguish between mandatory and discretionary governmental duties in prescribing the right of access to public records, nor would there appear to be a policy basis supporting such a distinction.[9]

In light of the apparent reservations of the Commonwealth Court majority, we take this opportunity to elaborate upon our opinions in *Sapp Roofing* and *McCandless*. These decisions establish that the Act reaches some class of materials that are not facially accounts, vouchers, contracts, minutes, orders or decisions. The general constraint upon this expanded class that became relevant in *McCandless* was that the party seeking to inspect government records must establish some close connection between one of the statutory categories and the material sought. *See McCandless*, 555 Pa. at 55–58, 722 A.2d at 1039–40. The imposition of such a requirement derives from the Commonwealth Court's previous holding that the minutes/orders/decisions category of public records covered

9. Public records are subject to disclosure precisely because they reflect the aspects of government decision making identified in the Right to Know Act. For example, in the case of accounts, vouchers and contracts, records are subject to public inspection because they "deal[ ] with the receipt or disbursement of funds by an agency or its acquisition, use or disposal of services or of supplies, materials, equipment or other property," 65 P.S. § 66.1, not because the agency was required to receive or disburse the funds or use services or supplies, but because it in fact made the decision to do so.

Parenthetically, we also note that, even on its own terms, the Commonwealth Court's determination would appear to lack factual support in the record. Although the Commonwealth Court found that PennDOT had no obligation to pay Envirotest, certainly Commonwealth agencies bear the general obligation imposed by law to pay their rightful, contractual debts—that such obligations are disputed and ultimately settled does not alone justify the conclusion that the debts are not actually owed. The scant record presented in the Commonwealth Court provides no basis for any conclusion concerning whether and to what extent the settlement payment ultimately tendered by the Commonwealth to Envirotest represented a satisfaction that was obligatory in nature (although certainly the amount of the settlement payment suggests that Envirotest's claims were predicated upon a substantial foundation). Nor, as further discussed below, *see infra* notes 13–14, does the record provide a basis for determining whether, to what extent, and in what manner the Ernst & Young report underlies or reflects the settlement actually tendered.

materials that were not facially minutes, orders or decisions but nevertheless represented "essential components" of covered decisions. *See id.* at 56–57, 722 A.2d at 1039 (citing cases). Although this formulation by the Commonwealth Court appropriately reflected the degree of correlation that is required, our essential effort has been to fully implement the policy of disclosure pursuant to the Act,[10] without straying unduly from the definitional limits prescribed by the Legislature and without elevating form over substance. *See id.* at 58 n. 4, 722 A.2d at 1040 n. 4. By emphasizing a requirement of close relation, *Sapp Roofing* and *McCandless* reflect this elaboration from Commonwealth Court precedent, as well as an extension of the logic to *both* the minutes/orders/decisions *and* the accounts/vouchers/contracts categories.[11]

With this context, we turn to the Senators' contentions. They assert that the Ernst & Young report constitutes a public record pursuant to the Act since it formed the basis for the expenditure by the General Assembly of more than $145 million dollars of public funds in settlement of the Envirotest litigation, and that, as such, it was closely related to or an "essential component" of an account, voucher or contract. The Senators advance no argument contesting OGC's contention that the report is within the scope of the work product doctrine and therefore outside the definition of public records

---

**10.** The Commonwealth Court has frequently emphasized that the General Assembly intended the Act's definition of "public records" to be liberally construed in furtherance of the enactment's salutary purposes. *See, e.g., Della Franco v. Department of Labor and Indus.*, 722 A.2d 776, 777 (Pa.Cmwlth.1999); *Arduino v. Borough of Dunmore*, 720 A.2d 827, 830 (Pa.Cmwlth.1998), *appeal dismissed*, 559 Pa. 415, 741 A.2d 195 (1999); *Bargeron v. Department of Labor and Indus.*, 720 A.2d 500, 501–02 (Pa.Cmwlth.1998); *Vargo v. Department of Corrections*, 715 A.2d 1233, 1236 (Pa.Cmwlth.1998); *Weaver v. Department of Corrections*, 702 A.2d 370, 371 (Pa.Cmwlth.1997).

**11.** The Commonwealth Court had never explained why it followed a strict, plain meaning interpretation of the accounts/vouchers/contracts category, while sanctioning an incrementally broader interpretation of the minutes/orders/decisions category, and we have found that the policies that inform the Act favor a more unitary interpretation which spans the two statutorily prescribed categories of public records. *See McCandless*, 555 Pa. at 55, 722 A.2d at 1039; *Sapp Roofing*, 552 Pa. at 109, 713 A.2d at 629.

under the Act. In this regard, the Senators note only that the work product doctrine is not expressly included in the statutory language of the Act, thus apparently suggesting that it may not be a pertinent consideration. The Senators' core argument, however, is that any claim to privilege or exception from disclosure has been waived by the Commonwealth, since, they allege, the legislative record pertaining to the authorization of the Envirotest settlement indicates that at least some contents of the report were disclosed to selected members of the General Assembly. Reflecting Judge Kelley's concurring and dissenting opinion, the Senators also emphasize the importance of public disclosure concerning the disbursement of funds of the magnitude reflected in the Envirotest settlement.

■ The Commonwealth Court has previously indicated that records reflecting attorney work product would not qualify as public records under the Act, *see Maleski v. Corporate Life Ins. Co.*, 163 Pa.Cmwlth. 36, 45, 641 A.2d 1, 5 (1994) (citation omitted), and we find this to be a correct interpretation. The work product doctrine, as embodied in Pennsylvania Rule of Civil Procedure 4003.3, protects from disclosure, *inter alia*, "mental impressions, conclusions or opinions respecting the value or merit of a claim or defense or respecting strategy or tactics," including those of a party's representative who is not the party's attorney. Pa.R.C.P. No. 4003.3. In many jurisdictions, in the administrative arena, the work product doctrine effectively serves as a subset of a broader group of principles concerned not merely with protecting deliberative processes associated with litigation, but with insulating administrative agency deliberative processes generally. *See, e.g., Commonwealth ex rel. Unified Judicial System v. Vartan*, 557 Pa. 390, 399–402, 733 A.2d 1258, 1263–65 (1999)(plurality opinion)(citing jurisdictions endorsing a deliberative process privilege). This protection is supported by policies concerned with facilitation of full and free communication and exchange in agency operations and practice, as was noted in the following passage from *Vartan:*

> The deliberative process privilege benefits the public, and not the officials who assert the privilege. The purpose for

the privilege is to allow the free exchange of ideas and information within government agencies. The privilege recognizes that if governmental agencies were "forced to operate in a fishbowl, the frank exchange of ideas and opinions would cease and the quality of administrative decisions would consequently suffer."

*Id.* at 400, 733 A.2d at 1264. *See generally* R. Weaver & J. Jones, *The Deliberative Process Privilege,* 54 Mo. L.Rev. 279 (1989). Based upon such considerations, a number of jurisdictions have determined that records reflecting deliberative processes are excluded from requirements of public disclosure which would otherwise be imposed pursuant to pertinent statutory provisions. *See, e.g., City of Colorado Springs v. White,* 967 P.2d 1042, 1050 (Colo.1998).[12]

 This Court has not definitively adopted the deliberative process privilege, *cf. Vartan,* 557 Pa. at 402, 733 A.2d at 1265 (reflecting the view of a plurality of the Court that the privilege should be adopted), and it is beyond the scope of the present opinion to do so. The policies that inform such privilege as well as the work product doctrine, however, are pertinent to our construction of the Act as an aid in determining legislative purpose. Notably, in prescribing the right of access to public records, the General Assembly evinced no expression of intention to subject the internal, deliberative aspects of agency decision making to mandatory public scrutiny. Indeed, although it did not craft a specific exception or exclusion for records reflecting deliberative processes or work product, the General Assembly delineated the subjects of mandatory disclosure by reference to concrete decisional implements, namely, minutes, orders, decisions, accounts, vouchers and contracts. Therefore, the underlying mental impressions, opinions and conclusions of agency decision makers and their representatives could qualify as public records under the Act only pursuant to the incremental expansion resulting from the Commonwealth Court's decisions in relation to the min-

12. Indeed, the federal Freedom of Information Act contains an express exception for deliberative aspects of agency decision making. *See* 5 U.S.C. § 552(b)(5).

utes/orders/decisions category and our extension of this logic to the accounts/vouchers/contracts category. But the materials at issue in the pertinent decisions, such the payroll records in *Sapp Roofing*, simply have not concerned deliberative aspects of agency decision making. In light of the policy considerations referenced above, and in the absence of some further expression of legislative intent, we decline to infer that by prescribing a right of public access to minutes, orders, decisions, accounts, vouchers and contracts, the General Assembly meant to expose predecisional, internal deliberative aspects of agency decision making to mandatory public scrutiny. Thus, we hold that the definition of public records prescribed in the Right to Know Act, 65 P.S. § 66.1, does not apply to materials or portions thereof which reflect such deliberative aspects.

▇▇▇▇ Pursuant to this holding, to the extent that the Ernst & Young report constitutes work product, or otherwise reflects predecisional deliberative aspects of PennDOT's or its representatives' decision making processes, it is not subject to compulsory public disclosure pursuant to the Act. The burden of establishing that requested material bears characteristics of a public record rests upon the party seeking access. *See McCandless*, 555 Pa. at 56, 722 A.2d at 1039. Although OGC issued what amounts to an informal adjudication concluding that the report comprised work product that would be outside the scope of required disclosure under the Act pursuant to both existing Commonwealth Court decisions as well our reasoning above, there is no evidence that the Senators sought further development concerning the contents of the report from OGC or similar relief in the Commonwealth Court, such as a remand for further factual development,[13] or *in camera*

13. On review of the denial of a request under the Act, a reviewing court must determine whether the denial was for just and proper cause. *See* 65 P.S. § 66.4. Particularly because, in the context of the Act, a state agency from which disclosure is requested functions as both the body adjudicating the request and the party withholding access, where a requestor has identified material with reasonable specificity and made a colorable claim that it may contain information subject to disclosure pursuant to the Act, the agency should be required to provide sufficiently detailed information concerning the contents of the requested docu-

review.[14] Finally, in their present posture as appellants before this Court, the Senators also fail to contest the adequacy of the record or to dispute OGC's essential contention that the

ment to enable a reviewing court to make an independent assessment of whether it meets the statutory requirements for mandatory disclosure. *Cf., e.g., White,* 967 P.2d at 1053–54. Here, OGC provided scant description of the Ernst & Young report in its letter denying access. The absence from the record of sufficient information concerning the contents of the report is further reflected in the conflicting positions of OGC and the Commonwealth Court concerning whether the report is or is not an audit. The Commonwealth Court majority also distinguished *Sapp Roofing* on the basis that the Ernst & Young report only "tangentially relat[ed] to disbursements by the Commonwealth," *see LaValle,* 737 A.2d at 333; however, there is no factual basis in the record to support this conclusion (although OGC made an assertion to this effect in its denial letter). That OGC may have erred by failing to provide sufficient explanation, however, does not entitle the Senators to relief, where they have failed to challenge the adequacy of such record on appellate review. *See generally Sheppard v. Old Heritage Mut. Ins. Co.,* 492 Pa. 581, 591, 425 A.2d 304, 309 (1980)(observing that the failure to pursue an issue on appeal is as effective a waiver as the failure to initially raise the issue in the tribunal of initial jurisdiction).

**14.** Questions concerning the availability of *in camera* review in the Commonwealth Court in its appellate capacity on review of an informal adjudication of a state agency denying public access pursuant to the Act are not presently before us. We note only that sound policy would appear to support the availability of an *in camera* procedure, where appropriate, and perhaps, in some circumstances, its requirement upon proper demand. *Cf. generally County of Los Angeles v. Superior Court,* 82 Cal.App.4th 819, 98 Cal.Rptr.2d 564, 575–76 (2000) (holding that an *in camera* inspection of local agency records was required in connection with a request for access pursuant to the California Public Records Act to determine whether they were protected by the enactment's work product exemption, where the county claimed that the documents had been prepared in anticipation of litigation). The potential applicability of such remedies illustrates the importance of preserving the question of the adequacy of the record in the agency and raising it specifically on appellate review. We expect that the Commonwealth Court will, in the first instance and in appropriate cases, develop standards to ensure that state agencies provide sufficiently detailed information concerning the contents of requested records to permit meaningful appellate review. This can be most effectively accomplished where the question is placed in controversy before the court, and the court is thus provided with the informed views of the parties concerning the extent of detail required and the manner in which its development should occur at both the agency level and on appellate review. Indeed, there are many models of methods for developing a record and administering appropriate appellate review which are discernible from practice in other jurisdictions and thus are available to inform the advocacy on the question. *See, e.g., id.; White,* 967 P.2d at 1053–54.

Ernst & Young report is comprised entirely of the mental impressions, opinions and conclusions of its representative. Under such circumstances, we find that the Senators have failed to meet their burdens of proof and issue preservation concerning the question of whether the report contains material qualifying as a public record.[15]

The principal argument which was presented by the Senators is that PennDOT and OGC have waived any reliance upon the work product doctrine by permitting selective access to the report by certain members of the General Assembly. In particular, the Senators quote from the following statement attributed to the Honorable F. Joseph Loeper:

[M]r. President, I believe that I do have figures that could answer the gentleman's questions [regarding how figures in House Bill 48 were arrived at]. Again, these figures that I am going to recite to him are figures that were verified to the Commonwealth by the firm of Ernst & Young, who audited or reviewed the material submitted by Envirotest in order to determine what their actual costs were.

This passage reveals, at most, the communication of "figures" by Ernst & Young, without reference to the manner and extent of the disclosure, including whether it occurred through the provision of the report in question, or even a report at all.[16] Further, the Senators provide insufficient argument

15. In the parlance of the Administrative Agency Law, the Senators failed to invoke the "in accordance with law" facet of the appellate courts' review, 2 Pa.C.S. § 704, on the basis that OGC's determination that the Ernst & Young report constituted work product was unsupported by competent factual findings and contained an inadequate basis for determining whether it was other than arbitrary and capricious. *Cf. generally Fraternal Order of Police v. Pennsylvania Labor Relations Bd.*, 557 Pa. 586, 591–92, 735 A.2d 96, 99 (1999).

16. As reflected in *Martin Marietta Corp. v. Pollard*, 856 F.2d 619 (4th Cir.1988), and its progeny, many jurisdictions apply a limited waiver concept to disclosures of opinion work product, in contrast to a broader "subject matter waiver" approach to non-opinion disclosures. *See id.* at 622. *See generally* B. Willcox, *Martin Marietta and the Erosion of the Attorney Client Privilege and Work–Product Protection*, 49 Md. L.Rev. 917, 929–34 (1990). In addition to the content of the material, other factors are frequently considered in the waiver assessment, such as the context of a disclosure, including whether it occurred in a testimonial

concerning the extent to which an intragovernmental, inter-branch disclosure that may be essential to the implementation of an agency decision would constitute a form of waiver. The question obviously carries political implications that would suggest special caution on the part of the judiciary in undertaking to resolve it squarely, particularly under the rubric of the statutory provisions providing for access to the general public. *Cf. infra* note 18 and accompanying text. Most centrally, however, we find that the assertion of selective disclosure lacks relevance in this context, since the uncontested status of the report as work product removes it from the categories of public records under the Act. Under our interpretation, the character of the material as work product serves not as an exception to the disclosure of material which would otherwise qualify as accessible, in which case waiver principles might be pertinent, but rather, as a definitional limitation upon what would be accessible in the first instance. We find that, where records are not the *type* of materials within the Act's initial purview, waiver principles cannot be applied to transform them into records subject to its coverage.[17]

Finally, we endorse the Commonwealth Court's observation that, since the present case proceeded pursuant to the Act's provisions for *public* access, it is not determinative concerning whether, and to what extent, the Senators might gain access in their capacity as members of the legislative branch.[18]

or non-testimonial setting. *See id.* at 924–26. Given our disposition below, and the absence of guidance from the briefs, we decline to undertake an assessment of the appropriate waiver analysis generally applicable to the work product doctrine in Pennsylvania.

17. We do not here foreclose the argument that, in some cases, an agency's failure to treat mental impressions, conclusions or opinions as internal deliberative processes may undermine this essential character and thus permit associated materials to satisfy the "essential component" or close relation tests under the Right to Know Act. *See McCandless*, 555 Pa. at 56–57, 722 A.2d at 1039 (citing cases). Significantly, the Senators have not framed their contentions in such terms or established that OGC or PennDOT proceeded in such a fashion in the present circumstances by apparently permitting limited, intragovernmental access to certain "figures" in the process of securing essential funding for the Envirotest settlement.

18. In a footnote, the Commonwealth Court majority stated:

Therefore, although Judge Kelley's comments regarding the desirability of cooperation between branches of government in budgetary matters carry substantial weight, they have no bearing upon the questions presently determined.

The order of the Commonwealth Court is affirmed.

Justice CAPPY files a joining concurring opinion in which Justice CASTILLE joins.

Justice NIGRO files a concurring opinion.

Justice ZAPPALA concurs in the result.

CAPPY, Justice, concurring.

I join the majority opinion. I agree with the majority that there is no indication in the Right to Know Act ("Act") that the General Assembly intended "to subject the internal, deliberative aspects of agency decision making to mandatory public scrutiny." Op. at 496. The plain language of the Act does not support the argument of Appellants that documents created in the deliberative process of the agency are subject to mandatory disclosure.

Furthermore, while I acknowledge that the majority does not adopt the deliberative process privilege, *id.*, it is my strong belief that this court should recognize the existence of such a privilege. The significant policy considerations militating in favor of the adoption of such a privilege are evident in the matter *sub judice*. Were we to expand the scope of the Act to reach documents related to the internal deliberative

Our conclusion that the requested documents are not "public records" under the Right to Know Act precludes access by any "citizen of the Commonwealth of Pennsylvania," including Petitioners in their individual capacities. While Petitioners also allege that they are duly elected members of the Senate of Pennsylvania, they cite no authority that would accord them greater rights of access than would be accorded to any citizen. We note, however, that both the majority and minority chairpersons of Senate and House Appropriations Committees have statutory rights to certain "budgetary data" in the possession of the Executive Branch. We express no opinion as to whether the type of information requested here would constitute "other budgetary data" within the meaning of Section 620.
LaValle, 737 A.2d at 333 n. 7.

process of the agency, there would be a deleterious effect on the candor necessary for an agency to arrive at reasoned decisions. Because of this chilling effect on the free exchange of ideas, the ultimate conclusions drawn by the agency would not be as well informed. This, in my opinion, would be a sorry state of affairs. As I believe that adoption of the deliberative process privilege would assure that the open exchange of ideas in a government entity would continue unimpeded, I would expressly endorse the privilege in this matter.

Justice CASTILLE joins this concurring opinion.

NIGRO, Justice, concurring.

I am compelled to agree with the majority that under the circumstances of the instant case, Ernst & Young's report was not subject to disclosure under the Right to Know Act because of the work product doctrine. *See* Pa.R.C.P. 4003.5; 65 P.S. § 66.1(2) (excluding from the definition of a public record any report to which access is prohibited by statute, law, or order); *Maleski v. Corp. Life Ins. Co.,* 163 Pa.Cmwlth. 36, 641 A.2d 1 (1994). I write separately to note that had the Senators challenged PennDOT's and OGC's assertion that Ernst & Young's report only contained Ernst & Young's mental impressions, opinions, and conclusions about PennDOT's defense for the Envirotest litigation,[1] I believe the Senators may have been able to establish that the report also contained information, such as factual data depicting Envirotest's damages and expenses, which is not privileged under the work product doctrine for an attorney's representative. *See* Pa.R.C.P. 4003.3. However, as the majority notes, because the Senators failed to seek an *in camera* review of the report, there is simply no way for this Court to determine whether the report contained solely work product, as alleged by OGC and Penn-DOT, or whether it contained information not protected under

1. The Senators had the burden to show that the report was both outside the work product privilege, *see Gould v. City of Aliquippa,* 750 A.2d 934, 937 (2000), and a public record under the Act. *See North Hills News Record v. Town of McCandless,* 555 Pa. 51, 56, 722 A.2d 1037, 1039 (1999).

the work product doctrine and therefore, properly subject to review under the Act.