**Rafic A. AMRO, M.D., Petitioner,**

**v.**

**The OFFICE OF ATTORNEY GENERAL, Bureau of Narcotics Investigation & Drug Control, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 20, 2001.

Decided Sept. 18, 2001.

---

Andrew K. Parker, Allentown, for petitioner.

Sarah C. Yerger, Deputy Atty. Gen., Harrisburg, for respondent.

Before DOYLE, President Judge, SMITH, Judge, and FLAHERTY, Senior Judge.

SMITH, Judge.

Rafic A. Amro, M.D., petitions for review of an adjudication of the Office of Attorney General (OAG) denying Amro's request to examine his criminal investigation file under the act commonly known as the Right–to–Know Act, Act of June 21, 1957, P.L. 390, *as amended*, 65 P.S. §§ 66.1–66.4. Amro contends that this action is properly in the Court's original jurisdiction and that he should be permitted to amend his pro se complaint pursuant to the Pennsylvania Rules of Civil Procedure now that he has legal counsel. Amro further contends that, as an innocent victim of orchestrated entrapment attempts and widespread computer misinformation over a 10–year period about his alleged drug activity, he is entitled to acquire copies of his complete record from the Bureau of Narcotics Investigation & Drug Control (Bureau).

I

Amro is an abdominal surgeon practicing in Allentown, Pennsylvania. Several years ago, the Bureau began to investigate allegations of Amro's involvement in drug trafficking. On April 5, 1999, Amro mailed a letter to Attorney General Mike Fisher, the body of which read:

I am a surgeon for last 30 year in USA, with USA citizenship, for last few years, something went wrong by the system.

Would you kindly to mail me my *PERSONNEL File* to include computer, phone calls, and note etc., and if there is any fee, I will be glad to pay it, according to PA Freedom of Information act.

I would like to hear from you, and thank you[.]

On June 8, 1999, the OAG mailed a letter to Amro, explaining that, as indicated at a prior court hearing, all records and documents that had been seized from Amro's office in 1993 had been inadvertently destroyed. The letter also indicated that Amro had refused acceptance of the documents on two separate occasions prior to their destruction. The OAG asserted that documents in the criminal investigative file were the work product of several special agents and were treated as confidential. Therefore, Amro would not be permitted to view it. None of the documents seized from Amro were part of the criminal file. As a result of the denial, Amro filed two pro se civil complaints against the OAG and against the Bureau in the Court of Common Pleas of Lehigh County, seeking access to his criminal file under the Right–to–Know Act, compensatory damages of $50,000,000 and punitive damages of $100,000,000.

■ On November 26, 1999, the common pleas court sustained the preliminary objections to the complaints filed by the OAG on grounds that the court lacked subject matter jurisdiction because the cases involved civil actions against a Commonwealth agency and the Commonwealth Court therefore possessed jurisdiction. The common pleas court transferred the cases to this Court to decide the remaining preliminary objections relating to a prior pending action, a demurrer and Amro's failure to comply with procedural rules. This Court entered a per curiam order on May 4, 2000, stating that, because this matter involves a challenge under the Right–to–Know Act, it would regard it as an appeal under Section 763 of the Judicial Code, 42 Pa.C.S. § 763, and that the Court would strike the OAG's outstanding preliminary objections because they are not a proper filing in the Court's appellate jurisdiction. The Court's review of the agen-

cy's decision is limited to determining whether the grant or denial of a request for information was for just and proper cause. *Times Publishing Company, Inc. v. Michel,* 159 Pa.Cmwlth. 398, 633 A.2d 1233 (1993).

Despite this Court's per curiam order of May 4, 2000, Amro argues that this matter is in the Court's original jurisdiction, and in his brief he requests leave to amend his complaint. The complaints filed by Amro in the common pleas court demanded access to all information related to the Bureau's investigation of Amro. The first complaint specifically references Amro's April 5, 1999 letter and the June 8, 1999 denial by the OAG. Thus it is clear that this matter involves a challenge under the Right–to–Know Act. Amro's proper remedy therefore is an appeal pursuant to Section 4 of that Act, 65 P.S. § 66.4. *See Lebanon News Publishing Company v. City of Lebanon,* 69 Pa.Cmwlth. 337, 451 A.2d 266 (1982). When a complaint in the nature of equity is commenced against a governmental unit and the proper mode of relief is an appeal from the determination of the governmental unit, the court shall regard and act upon the papers commencing the action as an appeal from the agency determination. Section 708(c) of the Judicial Code, 42 Pa.C.S. § 708(c). Accordingly, this Court properly ordered that it would regard this matter as an appeal from the OAG determination denying disclosure to Amro of documents in the Bureau's criminal investigative file. It therefore is unnecessary for Amro to file a complaint or an amendment to the complaint previously filed.

II

Amro argues that he is entitled under the Right–to–Know Act to disclosure of documents in the Bureau's criminal investigative file. The Court is required to

determine whether the documents fall within the definition of "public record" and, if so, whether they fall within any of the exceptions to disclosure. *Times Publishing Company.* The definition and the exceptions are both found in Section 1(2) of the Right–to–Know Act, 65 P.S. § 66.1(2), which provides:

'Public Record.' Any account, voucher or contract dealing with the receipt or disbursement of funds by an agency or its acquisition, use or disposal of services or of supplies, materials, equipment or other property and any minute, order or decision by an agency fixing the personal or property rights, privileges, immunities, duties or obligations of any person or group of persons: Provided, That the term 'public records' shall not mean any report, communication or other paper, the publication of which would disclose the institution, progress or result of an investigation undertaken by an agency in the performance of its official duties, except those reports filed by agencies pertaining to safety and health in industrial plants; it shall not include any record, document, material, exhibit, pleading, report, memorandum or other paper, access to or the publication of which is prohibited, restricted or forbidden by statute law or order or decree of court, or which would operate to the prejudice or impairment of a person's reputation or personal security, or which would result in the loss by the Commonwealth or any of its political subdivisions or commissions or State or municipal authorities of Federal funds, excepting therefrom however the record of any conviction for any criminal act.

■ The party seeking access to documents bears the burden of establishing that the requested material has the characteristics of a public record. *North Hills*

*News Record v. Town of McCandless,* 555 Pa. 51, 722 A.2d 1037 (1999). Amro contends that his criminal file is a public record because it is a "minute, order or decision by an agency fixing the personal or property rights, privileges, immunities, duties or obligations of any person or group of persons." *Id.* In the recent case of *LaValle v. Office of General Counsel,* 564 Pa. 482, 769 A.2d 449 (2001), the Supreme Court held that the definition of public record in the Right–to–Know Act does not apply to materials or portions thereof that reflect the predecisional, internal deliberative aspects of an agency decision. The Supreme Court explained:

The policies that inform [the deliberative process] privilege as well as the work product doctrine, however, are pertinent to our construction of the Act as an aid in determining legislative purpose. Notably, in prescribing the right of access to public records, the General Assembly evinced no expression of intention to subject the internal, deliberative aspects of agency decision making to mandatory public scrutiny. Indeed, although it did not craft a specific exception or exclusion for records reflecting deliberative processes or work product, the General Assembly delineated the subjects of mandatory disclosure by reference to concrete decisional implements, namely, minutes, orders, decisions, accounts, vouchers and contracts.

*Id.,* 564 Pa. at 496–497, 769 A.2d at 457–458.

One of the reasons that the OAG provided for denying Amro's request was that his criminal file contained the work product of several special agents. Further this file appears to have been created as part of the OAG's or its Bureau's predecisional, internal deliberative process for determining whether to prosecute Amro, and Amro does not identify any specific minute, order

or decision in the file. Nevertheless, the OAG does not dispute the contention that the documents fall within the definition of public record but argues instead that the documents are subject to the investigation exception.

 The Court will assume, arguendo, that Amro's criminal file meets the definition of a public record, but it nonetheless holds that the documents fall within the investigation exception to the Right–to–Know Act and are not subject to disclosure. The exception applies to completed and ongoing investigations undertaken by an agency in the performance of its official duties. *PG Publishing Company v. County of Washington*, 162 Pa.Cmwlth. 196, 638 A.2d 422 (1994). There is no dispute that the documents sought by Amro pertain to a formal investigation conducted against him by the Bureau. *See Gutman v. Pennsylvania State Police*, 148 Pa.Cmwlth. 567, 612 A.2d 553 (1992).

 Amro further argues that he should be afforded the same right to receive information that the accused has in a criminal prosecution pursuant to Article 1, § 9 of the Pennsylvania Constitution. That constitutional provision, however, applies to criminal prosecutions only and states, inter alia, that in such prosecutions the accused has the right to be heard, to determine the nature and cause of the accusation against him and to be confronted with witnesses against the accused. *R. v. Department of Public Welfare*, 535 Pa. 440, 636 A.2d 142 (1994). Amro does not allege that the criminal investigation of him ever resulted in a criminal prosecution or that a criminal prosecution was to commence against him. Thus Article 1, § 9 is inapplicable.

 Amro lastly argues that the Right–to–Know Act exceptions violate his equal protection rights under the Fourteenth Amendment of the United States Constitu-

tion because Pennsylvania law affords protection to others, namely the accused, while denying him disclosure. Amro provides no further analysis of this argument, and he provides no legal support for the proposition. Accordingly, it is waived for purposes of appellate review. *See, e.g., Monroe v. Pennsylvania Board of Probation and Parole*, 725 A.2d 223 (Pa.Cmwlth. 1999). The Court recognizes Amro's desire to review the Bureau's file in his attempt to be vindicated. However, the Right–to–Know Act affords him no relief under the law as it currently exists in this Commonwealth. The determination of the OAG is affirmed.

### *ORDER*

AND NOW, this 18th day of September, 2001, the adjudication of the Office of the Attorney General denying the request of Rafic A. Amro, M.D., to examine his criminal investigation file is hereby affirmed.