IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Luzerne and Susquehanna Railway   :
Company   :
  :
  :
v.   :   No. 833 C.D. 2022
  :   Submitted: February 6, 2024
Luzerne County Redevelopment   :
Authority, Reading Blue Mountain   :
and Northern Railroad Company   :
  :
Appeal of: R. J. Corman Railroad   :
Company/Luzerne and Susquehanna   :
Line, LLC, the successor of the   :
Petitioner, Luzerne and Susquehanna   :
Railway Company   :

BEFORE:   HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE LORI A. DUMAS, Judge
           HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE DUMAS                          FILED: April 1, 2024

       R.J. Corman Railroad Company/Luzerne and Susquehanna Line, LLC (L&S, or Appellant) appeals from the order entered in the Court of Common Pleas of Luzerne County (trial court), affirming in part and reversing in part an order issued by the Office of Open Records (OOR), and ordering the disclosure of certain railroad operating agreements as financial records pursuant to the Right-to-Know Law (RTKL).[1] After careful review, we vacate the trial court's order and remand for the

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.

trial court to hold an evidentiary hearing or conduct an *in camera* review of the operating agreements.

## I. BACKGROUND[2]

On June 26, 2020, Reqiester submitted a RTKL request to the Luzerne County Redevelopment Authority (the Authority).[3] In relevant part, Requester sought operating agreements between the Authority, Luzerne County Rail Corporation (LCRC),[4] and railway operators.[5] The Authority refused to provide the

[2] Unless otherwise stated, we base the recitation of facts on the trial court's findings of fact and conclusions of law, as well as its addendum to its findings of fact and conclusions of law, to the extent those findings and conclusions are supported by the record. *See* Findings of Fact & Conclusions of Law, 7/7/22; *see also* Addendum, 1/5/23. We note further that Reading Blue Mountain and Northern Railroad Company (Requester) has submitted prior, similar requests that resulted in several appeals to the OOR and the trial court. *See, e.g.*, *Reading Blue Mountain Northern Railroad v. Luzerne County Redevelopment Authority and Luzerne and Susquehanna Railway Co.*, OOR Dkt. AP 2020-0039. The resolution of these prior requests does not impact our current analysis. Additionally, we have limited our description of the factual and procedural background of this case to focus on the issues preserved for our review.

[3] The Authority is an independent governmental agency created pursuant to the Urban Redevelopment Law, Act of May 24, 1945, P.L. 991, *as amended*, 35 P.S. §§ 1701-1719.2. Its mission is "to work with Luzerne County and its municipalities to assist in improving the quality of life and property for residents through eminent domain, the administration of grant programs, tax abatement programs, delinquent tax buyback programs, and the acquisition of the short line railroad that serves Luzerne County, and a portion of Lackawanna County." *See* Luzerne County Redevelopment Authority Official Website, https://www.luzernecountyredevelopment.org/ (last visited Mar. 28, 2024).

[4] LCRC is a Pennsylvania nonprofit corporation whose function is to "preserve rail service in and around Luzerne County," largely on rail lines that had been formerly operated by a defunct company. *See* Pet. for Rev., 10/19/20, at Ex. 2.

[5] Items 7 and 8 of the request sought, specifically: "[a]ny and all operating agreements by and between [the Authority], [LCRC], and the company, entity, and/or individual that currently operates its rail lines," and "[a]ny and all operating agreements by and between [the Authority], the LCRC, and the company, entity, and/or individual that has operated its rail lines from January 1, 1994 to the present." *See* Findings of Fact & Conclusions of Law, 7/7/22. In addition to these items, Requester also sought minutes of the Authority related to RTKL requests and the operating agreements, records related to the Authority's OOR appeals officer, communications between the Authority and LCRC, and by-laws of the Authority and LCRC. *See* Findings of Fact &

agreements on the basis that they contained confidential proprietary information exempt from public access.[6]

In August 2020, Requester appealed to the OOR. While this matter was pending, Appellant was granted leave to participate. Appellant submitted an affidavit from its president, Steven May, who attested that the requested operating agreements were private contracts between Appellant and LCRC that contained confidential proprietary information. *See* Pet. for Rev., 10/29/20, at Ex. 3. In response, Requester argued that the operating agreements were financial records of the Authority and, thus, not subject to the exemption. The OOR granted the appeal and ordered the Authority to produce the documents. *See* Final Determination, 9/18/20, at 7-8.

Appellant petitioned the trial court for review, contending that the requested documents were not records of the Authority and were also exempt from public disclosure as confidential and proprietary information under Section

---

Conclusions of Law, 7/7/22, at 1-7. The Authority provided most of this requested information, which is not relevant to this appeal.

[6] *See* Section 708(b)(11) of the RTKL, 65 P.S. § 67.708(b)(11). This exception exempts a record that "constitutes or reveals a trade secret or confidential proprietary information" from public access. *See id.* Confidential, proprietary information is defined as: "[c]ommercial or financial information received by an agency: (1) which is privileged or confidential; and (2) the disclosure of which would cause substantial harm to the competitive position of the person that submitted the information." *See* Section 102 of the RTKL, 65 P.S. § 67.102. Courts consider the "efforts the parties undertook to maintain its secrecy." *Pa. Pub. Util. Comm'n v. Friedman*, 293 A.3d 803, 825 (Pa. Cmwlth. 2023) (cleaned up). Additionally, the entity seeking to prevent disclosure must show "substantial harm" to its competitive position by establishing "(1) actual competition in the relevant market; and[ ] (2) a likelihood of substantial competitive injury" based on the release of the information. *Dep't of Corr. v. Maulsby*, 121 A.3d 585, 590 (Pa. Cmwlth. 2015).

708(b)(11) of the RTKL.[7]  During the pendency of the petition, the trial court did not hold an evidentiary hearing or view the operating agreements.

On July 7, 2022, the trial court reversed in part and affirmed in part OOR's decision and made a number of additional findings.  *See* Order, 7/7/22, at 1-2.  The trial court affirmed the OOR's finding that Appellant had not proven the records were confidential proprietary information, rejected OOR's finding that Appellant was collaterally estopped from introducing May's affidavit, and found that the requested documents were financial records of the Authority which were not exempt from disclosure under the RTKL.[8, 9]  *See id.* at 2.

Accordingly, the trial court ordered the Authority to provide Requester with the records within 30 days of the date of the order with appropriate redactions. *See id.*  Appellant timely appealed to this Court.

## II. ISSUES

On appeal, Appellant asserts that the trial court erred by determining that railroad operating agreements between two private entities are financial records of a government agency that is not a party to such agreements, does not possess such agreements, and does not operate the freight railroad subject to such agreements. *See* Appellant's Br. at 4.  Additionally, Appellant contends that the trial court erred

---

[7] Appellant's petition for review further explained that the documents at issue were not records of the Authority but were rather "a private agreement between two private parties." *See* Pet. for Rev., 10/19/20, at 5.

[8] The trial court also affirmed OOR's finding that the request was not duplicative and burdensome. *See* Order, 7/7/22, at 1-2.  This finding is not at issue in the current appeal.

[9] The trial court reversed the decision regarding collateral estoppel because the prior decision had been made on procedural, not substantive, grounds, and which did not result in a final judgment on the merits. *See* Findings of Fact & Conclusions of Law, 7/7/22, at 16-17.

4

by determining that the operating agreements were not exempt from public disclosure because they were confidential proprietary information. *See id.*[10]

### III. DISCUSSION[11]

### A. RTKL Generally

Under the RTKL, information is only subject to disclosure if it is a "public record." Section 301(a) of the RTKL, 65 P.S. § 67.301(a). Pursuant to Section 305, however, records in the possession of a local agency shall be presumed public unless (1) exempt from disclosure under Section 708 of the RTKL; (2) protected by a privilege; or (3) exempt under any other federal or state law or regulation or judicial order. *See* Sections 305 and 708 of the RTKL, 65 P.S. §§ 67.305, 67.708; *see also Allegheny Cnty. Dep't of Admin. Servs. v. A Second Chance, Inc.*, 13 A.3d 1025, 1035 (Pa. Cmwlth. 2011).

The RTKL defines "records" as "[i]nformation, regardless of physical form or characteristics, that documents a transaction or activity of an agency" and that is "created, received, or retained pursuant to law" or in connection with a "transaction, business or activity" of that agency. Section 102 of the RTKL, 65 P.S.

---

[10] Rule 2119(a) provides that an "argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part—in distinctive type or in type distinctively displayed—the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent." Pa.R.A.P. 2119(a). "The purpose of this rule is to facilitate the reader's comprehension of the arguments being made." *Robinson v. Schellenberg*, 729 A.2d 122, 124 (Pa. Cmwlth. 1999). It is not this Court's function to develop a party's arguments, and a party's failure to adhere to Rule 2119 and properly develop an argument may result in waiver. *C.M. v. Pa. State Police*, 269 A.3d 1280, 1285 (Pa. Cmwlth. 2022); *City of Phila. v. Workers' Comp. Appeal Bd. (Calderazzo)*, 968 A.2d 841, 846 n.4 (Pa. Cmwlth. 2009). Here, despite raising two issues in its statement of questions, Appellant's brief has multiple subheadings which do not accurately reflect the arguments, or the order of said arguments, raised therein.

[11] "When reviewing an order of the trial court regarding the RTKL, we must determine whether the findings of fact are supported by [substantial] evidence or whether the trial court committed an error of law or an abuse of discretion in reaching its decision." *City of Harrisburg v. Prince*, 288 A.3d 559, 567 n.7 (Pa. Cmwlth. 2023) (cleaned up).

5

§ 67.102. The RTKL defines financial records specifically as "[a]ny account, voucher or contract" dealing with "the receipt or disbursement of funds by an agency" or "an agency's acquisition, use or disposal of services, supplies, materials, equipment or property." *See id.* A financial record can also be the "salary or other payments or expenses paid to any officer or employee of an agency" or "a financial audit report." *See id.* Certain types or categories of records are exempt from disclosure, but financial records are not among them. *See* Section 708(b)-(c), 65 P.S. § 67.708(b)-(c).

The agency receiving a RTKL request bears the burden of proving that the record is exempt from disclosure by a preponderance of the evidence. Section 708(a)(1) of the RTKL, 65 P.S. § 67.708(a)(1). A preponderance of the evidence is such evidence as would lead a factfinder to find that the existence of a contested fact is more probable than the nonexistence of the contested fact. *Off. of the Dist. Att'y of Phila. v. Bagwell*, 155 A.3d 1119, 1130 (Pa. Cmwlth. 2017). If an agency does not have the records in its possession, it may deny the request and offer proof that the record does not exist. S*mith Butz, LLC v. Pa. Dep't of Env't Prot.*, 142 A.3d 941, 945 (Pa. Cmwlth. 2016).

In appeals involving a local agency, Section 1101(b)(1) of the RTKL charges an OOR appeals officer with the obligation of determining, in the first instance, whether an agency has met its burden of proof. 65 P.S. § 67.1101(b)(1) ("[T]he appeals officer shall make a final determination."). "Testimonial affidavits found to be relevant and credible may provide sufficient evidence in support of a claimed exemption." *McGowan v. Pa. Dep't of Env't Prot.*, 103 A.3d 374, 381 (Pa. Cmwlth. 2014); *see also Hodges v. Pa. Dep't of Health*, 29 A.3d 1190 (Pa. Cmwlth.

2011). However, conclusory affidavits are not sufficient to justify an exemption. *Off. of Governor v. Scolforo*, 65 A.3d 1095, 1104 (Pa. Cmwlth. 2013).

In appeals from the determination of the OOR appeals officer, the requester or local agency may petition for review in the court of common pleas in which the agency is located. *See* Section 1302(a) of the RTKL, 65 P.S. § 67.1302(a). In such matters, the trial court is "the ultimate finder of fact able to conduct full *de novo* review of appeals from decisions made by RTKL appeals officers." *Bowling v. Off. of Open Recs.*, 75 A.3d 453, 474 (Pa. 2013).

## B. Financial Records

## 1. The parties' arguments

Appellant contends that the operating agreements are not financial records of the Authority. *See* Appellant's Br. at 14. In support of this contention, Appellant asserts that there was no evidence that the Authority possessed, received, obtained, controlled, reviewed, or approved the operating agreements, or that the Authority had oversight over the operation of the freight railroad.[12]  *See id.* at 20. According to Appellant, the trial court erred by failing to conduct an *in camera* review of the requested operating agreements. *See id.* at 30-31.

In response, Requester contends that the trial court's broad interpretation of financial records is appropriate and includes records bearing a

---

[12] Appellant raises additional arguments related to Section 506(d)(1), 65 P.S. § 67.506(d)(1), and contends that the records are not accessible because they are "downstream" contracts. *See* Appellant's Br. at 29. The term "downstream" contracts, as used in the instant matter and in *Dental Benefit Providers, Inc. v. Eiseman*, 124 A.3d 1214 (Pa. 2015), references contracts concerning an entity that does not contract directly with a government agency, but, rather, contracts with an entity that *does* contract with a government agency. *See, e.g.*, *Eiseman*, 124 A.3d at 1223 (referencing "third-party records downstream from actual Commonwealth agency contracts"). Based on our disposition of the instant appeal, an in-depth discussion of these arguments is unnecessary at this time.

sufficiently close relationship to "fiscally related"[13] categories. *See id.* at 5-6 (citing *City of Harrisburg v. Prince*, 219 A.3d 602, 612 (Pa. 2019)). Thus, according to Requester, because the operating agreements are contracts related to the use of property owned by the Authority, the agreements are appropriately considered financial records under the RTKL. *See id.* at 6-7. Requester contends that *in camera* review was unnecessary, and that Appellant had ample time to request an *in camera* review but did not. *See id.* at 43-45.

## 2. Analysis

As noted, *supra*, a record is information, regardless of physical form or characteristic, documenting a transaction or activity of an agency that is created, received, or retained pursuant to a transaction, business, or activity of that agency. Section 102 of the RTKL, 65 P.S. § 67.102. A financial record is a contract dealing with the use of an agency's property. *See id.* A public record is a record, including a financial record, that is not exempt under Section 708, is not exempt from disclosure under any other Federal or State law, regulation, or judicial order, and is not protected by a privilege. *See id.*

Further, a record in the possession, custody, or control of a local agency shall be presumed to be a public record unless it is privileged or statutorily exempt. *See* 65 P.S. § 67.305. However, it is well settled that "agencies are not permitted to waive a third party's interest in protecting" certain records, and a third party may submit evidence "to show an interest in shielding certain information from

---

[13] *Prince* noted that financial records could encompass "not merely accounts, vouchers and contracts but also records bearing a sufficiently close connection to such 'fiscally related' categories, so long as they also 'deal with the receipt or disbursement of funds by an agency.'" *Prince*, 219 A.3d at 612 (citing *LaValle v. Off. of Gen. Counsel*, 769 A.2d 449, 456 (Pa. 2001)).

8

disclosure." *See Pa. Dep't of Educ. v. Bagwell*, 131 A.3d 638, 650 (Pa. Cmwlth. 2015).

Financial records are not exempt from disclosure under the RTKL. *See* Sections 708(b)-(c), 65 P.S. § 67.708(b)-(c). The meaning of financial records "is a broad one" and includes not only accounts, vouchers, and contracts, but also records "bearing a sufficiently close connection to such 'fiscally related' categories" as long as the records also "deal with the receipt or disbursement of funds by an agency." *See Prince*, 219 A.3d at 612. Financial records may also deal with the use of property. *See* Section 102 of the RTKL, 65 P.S. § 67.102.

In *Prince*, the Pennsylvania Supreme Court considered whether a spreadsheet created by the City of Harrisburg "to show the receipt of funds from donors . . . to the Protect Harrisburg Legal Defense Fund" constituted a financial record under the RTKL. *Prince*, 219 A.3d at 604. The Court noted that courts should broadly construe the "account, voucher or contract" category to effectuate expanded access to information about the activities of government. *See id.* at 615. The Court concluded that, pursuant to precedent, the term had multiple acceptable definitions and that to satisfy the statutory definition of a financial record, the spreadsheet at issue "need only bear a close connection to an account." *See id.* at 615-16. The Court determined that the spreadsheet was an account. *See id.* In so doing, the Court noted that the spreadsheet reflected a list of monetary donations and contained an enumeration of check amounts received by the City for a fund which was described as a "subaccount/line item." *See id.* at 616. Therefore, the Court examined the contents of the spreadsheet and made a fact-specific finding that it was an account. *See id.*

Instantly, we may infer that the trial court made a finding that the operating agreements are records. *See, e.g.*, *See* Findings of Fact & Conclusions of Law, 7/7/22, at 19-24. The trial court found that the Authority, an independent governmental agency subject to the RTKL, retains ownership of land, including the rail lines and railroad rights of way. *See id.* at 19. Further, while the court recognized that the Authority was not a party to the requested operating agreements, the court also found that the land subject to the operating agreements *is* owned by the Authority.[14] *See id.* Accordingly, the operating agreements were contracts that related to the Authority's use of its land. *See id.* Therefore, per the RTKL definition of financial records, the trial court concluded that the operating agreements were subject to disclosure. *See id.* at 22-23, 28. Further, the trial court observed that the Authority had never denied having possession of those records, and accordingly, they were presumed public. *See* Addendum, 1/5/23, at 3.

There are several issues with the trial court's findings. First, the trial court found that the Authority was not a party to the agreements, and that the agreements were between Appellant and LCRC. However, the initial request was for operating agreements between the Authority, the LCRC, *and* Appellant. The request, with a conjunctive "and," was for an agreement between three parties. Nevertheless, the trial court made a finding that the Authority was *not* a party to the agreements. Arguably, operating agreements between the LCRC and Appellant are not responsive to the original request.

Regardless, we cannot discern whether or not the operating agreements were financial records of the Authority or between whom the operating agreements were made, because they are not contained within the original record sent by OOR

---

[14] The Authority had assigned LCRC the right to use the railroad lines but did not transfer ownership of either the land or the railroad lines. *See id.*

10

to the trial court, nor are they provided in the original record of the trial court itself. It is unclear between whom the operating agreements were signed, whether they were responsive to the request, or the exact nature of said agreements. There is no indication, either, that the trial court reviewed the operating agreements prior to issuing its ruling. Indeed, the trial court did not hold, nor did Appellant request, *in camera* review: the trial court, in a telephone hearing, noted that if no one filed a brief requesting an evidentiary hearing, it did not know whether such a hearing was absolutely necessary.[15] *See* Notes of Testimony, 11/18/21, at 18.

While the trial court is correct that the statutory definition of a financial record includes contracts concerning an agency's use of its land, it is unclear from the pleadings whether the operating agreements constitute such contracts. As in *Prince*, a reviewing court must be able to determine whether the contents of the requested record bear "a sufficiently close connection" to a fiscally related category. *See Prince*, 219 A.3d at 612. Where the trial court has not reviewed the operating agreements, it cannot do so. Further, this Court cannot review the operating agreements, as they are not contained in the original record. Accordingly, we cannot conclude that the trial court's findings were supported by substantial evidence of record. *See Prince*, 288 A.3d at 567 n.7.

## IV. CONCLUSION

For the foregoing reasons, we vacate the trial court's order and remand to the trial court to hold an evidentiary hearing or conduct an *in camera* review of the operating agreements. The trial court shall then issue additional findings and

---

[15] The factfinder may conduct an *in camera* review as a "valuable tool to discern the propriety of a claimed exemption to disclosure," "if beneficial." *McKelvey v. Pa. Dep't of Health*, 255 A.3d 385, 412-13 (Pa. 2021).

11

conclusions relevant to whether the operating agreements are responsive to the request and constitute financial records of the Authority.

_____

LORI A. DUMAS, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Luzerne and Susquehanna Railway Company | : | |
| | : | |
| v. | : | No. 833 C.D. 2022 |
| | : | |
| Luzerne County Redevelopment Authority, Reading Blue Mountain and Northern Railroad Company | : | |
| | : | |
| Appeal of: R. J. Corman Railroad Company/Luzerne and Susquehanna Line, LLC, the successor of the Petitioner, Luzerne and Susquehanna Railway Company | : | |

## **O R D E R**

AND NOW, this 1st day of April, 2024, the order of the Court of Common Pleas of Luzerne County, dated July 7, 2022, is VACATED. This matter is REMANDED for further proceedings consistent with this memorandum opinion.

Jurisdiction relinquished.

LORI A. DUMAS, Judge