**DIGITAL–INK, INC., Petitioner**

v.

**DEPARTMENT OF GENERAL SERVICES, Respondent.**

Commonwealth Court of Pennsylvania.

Argued April 10, 2007.

Decided May 24, 2007.

Lane F. Kelman, Philadelphia, for petitioner.

Michael C. Barrett, Senior Counsel and Trent A. Hargrove, Chief Counsel, Harrisburg, for respondent.

BEFORE: PELLEGRINI, Judge, and COHN JUBELIRER, Judge, and KELLEY, Senior Judge.

OPINION BY Senior Judge KELLEY.

Digital–Ink, Inc. (Digital) petitions for review of an August 30, 2006 decision of the Department of General Services (DGS) denying Digital's request, pursuant to what is commonly referred to as the Right to Know Law (RTKL),[1] for certain information related to a request for proposal (RFP). We affirm.

On or about May 23, 2006, a request was submitted to DGS on behalf of Digital seeking the following information as related to RFP # CN00010638: (1) a copy of the evaluation committee's recommendation; (2) the identity of the committee members; (3) a copy of the confidentiality agreement signed by the respective committee members; and (4) a copy of the rankings. Digital requested the foregoing information for its use in a bid protest challenging the award of a statewide contract for printed materials and related services to a competitor pursuant to a competitive sealed proposal method of source selection.[2] The contract was awarded to Commonwealth Alliance, Inc. (CAI) and Digital filed a timely bid protest thereto on September 26, 2005. On August 30, 2006, DGS denied Digital's bid protest and sustained the award of the contract to CAI.

On July 7, 2006, DGS partially denied Digital's right to know request. Digital was not provided with documents containing the committee's recommendation or the identity of the committee members on the basis that those documents did not meet the general definition of "public rec-

---

1. Act of June 21, 1957, P.L. 390, *as amended,* 65 P.S. §§ 66.1–66.9.

2. We note that this appeal involves a proposal for professional services, not a competitive bid requiring the award to the lowest responsible bidder. No one has challenged whether the proposal for professional services procedure was proper.

ord" as defined in Section 1 of the RTKL. A link to the form confidentiality agreement signed by the committee members was provided to Digital. DGS informed Digital that all the information concerning Digital's ranking to which it was entitled was previously provided during the debriefing conference. Digital filed an exception to the partial denial of its right to know request.

On August 30, 2006, DGS issued a final determination denying Digital's request for a copy of the committee's recommendation, the identity of the committee members and a copy of the rankings. DGS found that the committee's recommendations did not exist in any documentary form beyond the rankings; therefore, the denial on the basis that the recommendations are not "public records" was proper. With respect to the identity of the committee members, DGS found that it was under no obligation to provide a list of the identity of the committee members where no such list exists and the documents from which such a list may be compiled do not meet the statutory definition of public rec-

ords. DGS found further that Digital was not entitled to disclosure of the rankings as it was told of its own ranking and that the contract was awarded to the bidder with the highest ranking of which Digital was aware. DGS found further that the release of unsuccessful proposals is specifically excepted from the definition of public record because disclosure is prohibited by statute, specifically, Section 106(b)(1) of the Procurement Code, 62 Pa.C.S. § 106(b)(1).[3] Finally, DGS determined that the rankings were not subject to disclosure under the RTKL on the basis that the rankings reflect DGS' deliberative process in evaluating the proposals. This appeal followed.[4]

■ Herein, Digital raises the issue of whether DGS improperly denied Digital's request for public records.[5] In support of this issue, Digital first argues that the committee's recommendation *is the decision* of the committee; therefore, the recommendation falls within the statutory definition of "public record." Digital argues that this is supported by DGS' pub-

---

3. (b) EXCEPTIONS.—
   1) Financial information of a bidder or offeror which was requested in an invitation for bids or request for proposals to demonstrate its economic capability to fully perform the contract requirements and which is contained in a sealed bid, sealed proposal or prequalification document and an unsuccessful proposal shall be confidential. The financial information or an unsuccessful proposal may only be disclosed by a Commonwealth agency if:
   (i) the information or proposal is disclosed to a consultant who is retained by the Commonwealth and who has signed a confidentiality agreement;
   (ii) the information or proposal is used to defend the Commonwealth's interests in a legal action; or
   (iii) the information or proposal is disclosed under a court order.

4. Digital originally filed a petition for review with regard to its bid protest and its denial

under the Right to Know Law and the two cases were consolidated. However, by order of this Court filed January 8, 2007, the cases were severed and ordered to proceed separately. In addition, Digital's motion to hold in abeyance the bid protest petition at Docket Number 1699 C.D.2006 was granted and the action at 1699 CD 2006 was stayed pending a determination on the merits by this Court of this action at Docket Number 1756 CD 2006.

5. This Court's scope of review of a decision under the RTKL, as amended in 2002, is limited to whether constitutional rights have been violated, whether an error of law has been committed and whether necessary findings of fact are supported by substantial evidence in the record. *Berman v. Pennsylvania Convention Center Authority*, 901 A.2d 1085 (Pa.Cmwlth.2006), *petition for allowance of appeal denied*, 591 Pa. 705, 918 A.2d 748 (2007).

lished rules and regulations governing the RFP process which are found in the General Services Procurement Handbook (Handbook) and the Public Works Request for Proposal Process Guidelines (Guidelines). Digital contends that if it is in fact true that the recommendation does not exist in documentary form, this is a violation of DGS' internal policy as both the Handbook and the Guidelines create strict requirements to ensure that the RFP process is recorded.

In response, DGS contends that the committee did not prepare a written recommendation instead it only transmitted the rankings as determined by the respective scores to the Secretary of DGS for a decision. DGS contends that the Handbook does not require the committee to issue written recommendations and that the Guidelines are inapplicable to the RFP involved in this case. DGS further argues that under the RTKL, it is not required to create a public record which does not currently exist.

Section 1 of the RTKL provides, in relevant part, as follows:

"Public record." Any account, voucher or contract dealing with the receipt or disbursement of funds by an agency or its acquisition, use or disposal of services or of supplies, materials, equipment or other property and any minute, order or decision by an agency fixing the personal or property rights, privileges, immunities, duties or obligations of any person or groups of persons: ...

65 P.S. § 66.1.

Section 2(e) of the RTKL, which governs "creation of a public record," provides as follows:

When responding to a request for access, an agency shall not be required to create a public record which does not currently exist or to compile, maintain, format or organize a public record in a manner in which the agency does not

currently compile, maintain, format or organize the public record.

65 P.S. § 66.2(e).

■ Herein, DGS informed Digital that the committee did not prepare a written recommendation and Digital does not contend otherwise. Digital argues that if no committee recommendation exists, then DGS violated the requirements of the Procurement Code, the Handbook and the Guidelines. We disagree.

First, we note that we agree with DGS that the Guidelines relied upon by Digital as support for its argument, that the committee's recommendation is the actual decision of the committee and therefore falls within the statutory definition of "public record", are not applicable. The stated purpose of the Guidelines "is to provide information on the [RFP] process and steps to be undertaken by the Department of General Services Public Works (DGS) when procuring multiple prime contractors on a construction project through a competitive sealed proposal process." *See* Public Works Request for Proposal Process Guidelines at p. 3. The RFP at issue herein was for a statewide contract for printed materials and related services and not for a construction project.

Second, upon review of the Handbook, we conclude that the committee is not required to make a written recommendation. The stated purpose of the Handbook is to provide a standard reference to established policy, procedures and guidelines for the procurement of supplies, services and construction under the authority of the Procurement Code. *See* General Services Procurement Handbook at Chapter 1, Section A. The Handbook provides further in Chapter 6, Section B, which governs competitive sealed proposals, that in order to provide greater flexibility, the Procurement Code *does not provide a rigid, detailed procedure or strict requirement for*

the competitive sealed proposals method. *Id.* at Chapter 6, Section B(1)(e).

Pursuant to the Handbook, an evaluation committee is selected to evaluate the proposals using evaluation factors and weights which are fixed prior to the opening of the proposals. *Id.* at Chapter 6, Section B(7)(a). The duties of the committee are specifically outlined including evaluating the proposals and ranking them in order of merit based on the evaluation criteria as contained in the RFP and recommending proposals to be selected for negotiation. *Id.* at Section B(7)(c). With regard to the evaluation procedure, the Handbook provides for a six step "suggested proposal evaluation procedure", not a mandatory procedure. *Id.* at Section B(7)(d). While this six step "suggested proposal evaluation procedure" culminates in a committee recommendation as to which offeror should be recommended for contract negotiation, the Handbook does not require that the recommendation be in writing. Thus, the evaluation committee is not mandated to reduce any recommendation to writing.

Accordingly, as correctly pointed out by DGS, the Handbook does not require that the evaluation committee's recommendation, as to which offeror's proposal should be selected for negotiation, be in writing. As such, DGS properly denied Digital's request for the evaluation committee's recommendation under the RTKL as such recommendation does not exist.[6]

Next, Digital argues that DGS improperly denied its right to know request for the identity of the committee members. Digital contends that this denial prevented Digital from proving in its bid protest that members of the committee met with CAI during the award process. Digital argues that lists of names or documents from which lists can be compiled are public records. Digital contends further that even if a list is not in existence, the requesting party is entitled to the records or information from which it may compile a list of the information sought. Digital argues that the names of the committee members may be obtained from the confidentiality agreement each member is required to sign. Digital points out that the first version of the final determination denying Digital's right to know request granted Digital access to this very information. It was only in the final version that was access denied.

In response, DGS contends that there is no list of committee members to disclose as the committee is an *ad hoc* group formed in response to each specific procurement. Therefore, there is no document in existence which is responsive to Digital's request. DGS argues that it is not required under Section 2(e) of the RTKL to compile as a public record a list of the committee members since it normally does not compile such a list. We agree.

Initially, we point out that this Court is only reviewing the final determination by DGS, dated August 30, 2006, denying Digital's right to know request, not any previous version. As stated in Section 2(e) of the RTKL, an agency shall not be required to compile, maintain, format or organize a public record in a manner in which the agency does not currently compile, maintain, format or organize the public record. As noted by this Court, "an agency is not, upon such request for information under the [RTKL], required to modify its practices by compiling lists of information when such lists are not otherwise kept by the agency or required by law." *Current Status, Inc. v. Hykel,* 778 A.2d 781, 784 n. 4 (Pa.Cmwlth.), *petition for allowance of*

---

6. We note that while Digital contends that DGS violated the Procurement Code by not having a written committee recommendation, Digital does not cite any specific section or provision for our review. Therefore, we will not address this portion of their argument.

*appeal denied,* 567 Pa. 766, 790 A.2d 1019 (2001).

In the present case, Digital has not shown that DGS routinely keeps a separate list of the names of the evaluation committee members. In addition, Digital does not cite to any law which requires DGS to compile a list of the names of the committee members. Moreover, DGS is not required to provide Digital with a copy of the confidentiality agreement actually signed by each committee member in order for Digital to ascertain the names of the committee members. It is Digital's burden [7] to establish that the confidentiality agreements are public records under the RTKL and it offers no argument that the agreements fall within the definition of public record as found in Section 1 of the RTKL. Accordingly, we conclude that DGS properly denied Digital's right to know request for the identity of the committee members.

Next, Digital argues that DGS improperly denied its request for a copy of the rankings on the grounds that the rankings are not "public records" and are protected by the deliberative process privilege. Digital contends that if a document constitutes "an essential component" of an agency decision, it falls within the definition that makes a "decision" a "public record." Digital argues that to be considered "an essential component" of an agency decision, the decision must have been contingent on the information contained in the document and could not have been made without it. Digital contends that the rankings are an essential component of DGS' decision and therefore are "public records" and not protected by the deliberative process privilege. Digital argues that the rankings contain the score that each offer-

or obtained from the respective members of the evaluation committee; therefore, the rankings are a prerequisite to the evaluation committee's recommendation to DGS to select CAI as the successful bidder. Therefore, Digital contends, the rankings are also an essential component of the DGS' decision to award the contract to CAI.

Digital argues further that the rankings are not subject to the limited exclusion created in Section 106 of the Procurement Code, 62 Pa.C.S. § 106. Section 106 permits the public to obtain copies of any procurement information and Section 106(b)(1) prohibits DGS from disclosing copies of unsuccessful proposals. Digital contends that Section 106 clearly does not encompass rankings, either explicitly or implicitly. The only codified exceptions pertain to financial information or an unsuccessful proposal. Therefore, Digital contends, the rankings are not exempted from disclosure. Finally, Digital argues that CAI's proposal was not "unsuccessful"; therefore, it is not covered under Section 106.

In response, DGS argues that it properly denied Digital's right to know request for the RFP committee's scores or rankings. DGS contends that while the actual scores assigned do exist, the information is exempt from disclosure. DGS argues that the preliminary assessments of the merits of each proposal are clearly pre-decisional information and are not "public records" subject to the disclosure requirements of the Law. The scores sought by Digital are made prior to the completion of the ultimate deliberation process at issue. DGS contends further that while the committee's deliberation may be complete upon

---

**7.** A requesting party has the burden to establish that the documents he or she seeks are public records under the RTKL. *Rowland v. Public School Employees' Retirement System,* 885 A.2d 621 (Pa.Cmwlth.2005), *petition for allowance of appeal denied,* 587 Pa. 703, 897 A.2d 462 (2006).

its assignment of the scores, the scores themselves form only one part of the whole decision making process. DGS argues that Digital is not seeking any factual information only the committee's purely subjective evaluations which are embodied in their scores. DGS contends that the information is not an "essential component" of the determination, as case law defines the term.

■ As noted herein, a requesting party has the burden to establish that the documents he or she seeks are public records under the RTKL. *Rowland.* To establish a document as a public record under Section 1 of the RTKL, the party asserting a right of access to the material must demonstrate that it is: (1) developed by an agency covered by the RTKL; (2) a minute, order, or decision of a covered agency, or an essential component to an agency decision; (3) a document that fixes the personal rights, property rights, or duties of an individual or individuals; and (4) not otherwise protected by statute, order, or decree of court. *Id.*

We will first address whether the rankings are exempt from disclosure pursuant to Section 106 of the Procurement Code. Section 106 governs public access to procurement information and provides in relevant part as follows:

(a) OPEN RECORDS.—Except as provided in section 512(d) (relating to competitive sealed bidding) and subsection (b), any documents created by or provided to any Commonwealth agency for any procurement shall be subject to inspection and copying only to the extent already required under the act of June 21, 1957 (P.L. 390, No. 212), referred to as the Right–to–Know Law.

(b) EXCEPTIONS.—

1) Financial information of a bidder or offeror which was requested in an invitation for bids or request for proposals to demonstrate its economic capabili-

ty to fully perform the contract requirements and which is contained in a sealed bid, sealed proposal or prequalification document and an unsuccessful proposal shall be confidential. The financial information or an unsuccessful proposal may only be disclosed by a Commonwealth agency if:

(i) the information or proposal is disclosed to a consultant who is retained by the Commonwealth and who has signed a confidentiality agreement;

(ii) the information or proposal is used to defend the Commonwealth's interests in a legal action; or

(iii) the information or proposal is disclosed under a court order.

According to the Handbook, proposals are evaluated and ranked in order of merit based on evaluation criteria as contained in the RFP. *See* General Service Procurement Handbook at Chapter 6, Section B(7). Clearly, as stated in Section 106, only financial information or unsuccessful proposals are exempt from disclosure. As such, we conclude that the rankings are not exempt from disclosure under Section 106 of the Procurement Code.

■ We now turn to Digital's contention that the rankings are subject to disclosure because they constitute "an essential component" of DGS's decision to award the contract to CAI. As recently held by this Court, "[t]he fact that information may have had some impact on an agency decision does not make it an essential component; a document must be a basis for or a condition precedent of a decision." *Berman,* 901 A.2d at 1091. "In other words, the agency could not have made the decision without the information at issue." *LeGrande v. Department of Corrections,* 920 A.2d 943, 948 (Pa.Cmwlth.2007).

Our Supreme Court has held that the internal deliberative aspects of agency decision making are not subject to mandato-

ry public scrutiny under the RTKL. *See LaValle v. Office of General Counsel,* 564 Pa. 482, 769 A.2d 449 (2001). In *LaValle,* our Supreme Court stated:

> Notably, in prescribing the right of access to public records, the General Assembly evinced no expression of intention to subject the internal, deliberative aspects of agency decision making to mandatory public scrutiny. Indeed, although it did not craft a specific exception or exclusion for records reflecting deliberative processes or work product, the General Assembly delineated the subjects of mandatory disclosure by reference to concrete decisional implements, namely, minutes, orders, decisions, accounts, vouchers and contracts. . . . [W]e decline to infer that by prescribing a right of public access to minutes, orders, decisions, accounts, vouchers and contracts, the General Assembly meant to expose predecisional, internal deliberative aspects of agency decision making to mandatory public scrutiny. Thus, we hold that the definition of public records prescribed in the Right to Know Act, 65 P.S. § 66.1, does not apply to materials or portions thereof which reflect such deliberative aspects.

*Id.* at 496–97, 769 A.2d at 458.

■ Upon review of the Handbook and the requirements and procedures contained therein for the competitive sealed bid process, we conclude that the rankings are not an essential component of a decision to award a contract based on a RFP. It is clear from the Handbook that the rankings are one step in the entire deliberative decision making process as to which offeror should be selected for contract negotiation. The evaluation committee evaluates the proposals and ranks them in order of merit based on evaluation criteria as contained in the RFP. *See* General Services Procurement Handbook at Chapter 6, Section B(7)(c). For purposes of the final evaluation, the offerors are ranked according to the total score assigned to each, in descending order, using the final evaluation committee scores based upon the evaluation factors. *Id.* at Section B(7)(d). The Handbook provides that "[t]he offeror with the highest score is normally recommended for contract negotiation." *Id.* However, the selection of the offeror with the highest score is not mandated by the Handbook.

The Handbook further provides that the purchasing agency is directed, using the evaluation factors, to select for contract negotiation the offeror whose proposal is determined, in writing, to be the most advantageous to the purchasing agency. *Id.* at Section B(8). The Handbook does not direct the purchasing agency to select the offeror with the highest ranking or score.

Clearly, the rankings portion of the competitive sealed bid process is only one step in an exhaustive procedure that is taken before the deliberative process is complete. Therefore, the rankings are just one factor that the purchasing agency may consider in choosing the most advantageous proposal. In other words, the purchasing agency could have made the decision to award the contract to CAI without the rankings requested herein by Digital.

Therefore, we conclude that the rankings are not an essential component of the decision but part of the materials which reflect the deliberative aspects of the agency's decisional process. Accordingly, DGS properly denied Digital's right to know request for a copy of the rankings for the RFP at issue herein.

Finally, Digital argues that DGS' failure to disclose the public documents impacted Digital's bid protest as well as its pending petition for review. Digital argues that, as there is no formal discovery during a bid protest, it is limited to a record that is

comprised of documents in its possession and those documents that are obtained pursuant to this right to know request. Digital contends that, by denying Digital access to public records, DGS has prevented Digital from developing a complete record for its appeal.

In response, DGS argues that the fact that Digital is seeking the documents to help it with its bid protest is of no moment. The Law is designed to benefit the public at large by disclosing public records—it is not designed to benefit individual interests.

Pursuant to Section 2(a) of the RTKL, "[u]nless otherwise provided by law, a public record shall be accessible for inspection and duplication by a requester in accordance with this act." 65 P.S. § 66.2(a). Section 2(a) further provides that "[n]othing in this act shall provide for access to a record which is not a public record." *Id.* Therefore, regardless of the reason why

Digital is seeking documents and information from DGS, if the document does not constitute a public record, DGS is under no obligation to disclose it pursuant to a right to know request.

Accordingly, we affirm the decision by DGS denying Digital's request for certain documents and information pursuant to the Right to Know Law.

### ORDER

AND NOW, this 24th day of May, 2007, the decision of the Department of General Services denying the request pursuant to the Right to Know Law for copies of certain documents as related to Request For Proposal # CN00010638 by Digital–Ink, Inc. is affirmed.