# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Matthew Scot Payne,                     :
                 Petitioner      :
                                :
            v.                     :   No. 579 C.D. 2019
                                :   ARGUED:  December 12, 2019
Pennsylvania Department of Health,      :
             Respondent      :


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
                 HONORABLE MICHAEL H. WOJCIK, Judge
                 HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


**OPINION BY**
**SENIOR JUDGE LEADBETTER**            **FILED:  September 15, 2020**


Matthew Scot Payne, Esq. (Requester), petitions for review from the Final Determination of the Office of Open Records (OOR) upholding the Pennsylvania Department of Health's denial of his Request for Documents. The request sought scores given by the Department's Office of Medical Marijuana (MM Office) to an application for a medical marijuana grower-processor permit submitted by BCI2, LLC (BCI2[1]) (Applicant No. GP18-5006). Currently at issue is whether the scores are shielded from disclosure under the Right-to-Know Law[2] (RTKL) by the predecisional deliberations exemption found at Section 708(b)(10)(i)(A), 65 P.S. § 67.708(b)(10)(i)(A), thereof and/or the MM Office's temporary regulation at 28

---

[1] At several junctures in the record, BCI2 is referred to as "BC12." (*See, e.g.*, OOR Final Determination, Reproduced Record "R.R." at 88a, 91a, 95a.)

[2] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101–67.3104.

Pa. Code § 1141.22(b)(11) concerning records subject to disclosure and confidentiality under the RTKL. For the reasons that follow, we reverse.

The background of this matter is as follows: BCI2 filed an application for a medical marijuana grower-processor permit which was rejected by the Department on the ground that the application was incomplete because it lacked a signature on one document. On February 7, 2019, an administrative hearing was held concerning BCI2's claim that the Medical Marijuana Act[3] required the Department to give BCI2 an opportunity to cure the defect before denying its permit. During that hearing, Sunny Podolak, the MM Office's Chief Compliance Officer, testified that its review of such applications entailed a four-stage process. During the third or evaluation stage, a committee of experts would give the application preliminary scores in various categories. Thereafter, a different group, comprising employees from the MM Office, would conduct the permitting phase, where:

> [W]e reviewed all applications again. We did another in-depth dive to see if anything was in fact going to be deemed incomplete, and at that point, if something, if one of the applications was incomplete, their [sic] preliminary score would be voided and that application would then be rejected.
>
> Any of the applications that were complete, we would take a look at those preliminary scores and put those in numerical order, and we would then award the top scores.

(Reproduced Record "R.R." at 26a.) Following the hearing, Requester, an attorney for BCI2, filed a RTKL request on its behalf, as rephrased in its submission to the OOR, seeking:

> [D]ocuments referring to, reflecting, [. . .] or evidencing any and all scores given to the whole of and/or any

---

[3] Act of April 17, 2016, P.L. 84, 35 P.S. §§ 10231.101 – 10231.2110.

constituent part of the medical marijuana grower-processor permit application submitted by [BCI2].

(R.R. at 17a.) The Department denied the Request on grounds, *inter alia*, that the requested "scoring notes and materials" were exempted from disclosure by the above-mentioned provisions of the RTKL and the temporary regulation. (R.R. at 12a-14a.)[4]

Requester timely appealed the Department's denial of the Request to the OOR, submitting redacted excerpts of Ms. Podolak's testimony during the hearing on the administrative challenge. The OOR invited both parties to supplement the record and directed the Department to notify any third parties of their ability to participate in the appeal.

On March 25, 2019, Requester submitted a position statement, arguing that the requested records were neither predecisional nor deliberative and could not, therefore, be exempt under the predecisional deliberations exemption of the RTKL.[5]

---

[4] A note of clarification is in order regarding the differentiation between "score" (singular) and "scores" (plural) which are not uniformly used to describe the same things. The testimony and Ms. Podolak's subsequent Affidavit both refer to "scores" assigned during the penultimate stage of the permitting process by an evaluation committee of subject-matter experts; the score sheet includes a set of scores assigned to various characteristics of the application, apparently reached by combining the scores of the evaluation committee members by some process not described in the record; the singular "preliminary score" is the sum of the scores on the score card, which the evaluation committee computes [*see* Department's Br. at 15 ("a preliminary score is generated prior to the permitting stage") (citing R.R. at 84a)]; and the singular "final score" is what the permitting committee would rank from an application deemed complete against other complete applications in the last stage of the process. It is not clear from either the testimony or from the Affidavit whether the evaluation committee's preliminary scores were ever changed in the permitting stage. In light of the fact that BCI2 never received any score(s) during permitting and in light of our analysis here, that information is of no significance.

[5] In both the appeal to OOR and his position statement, Requester focused on the portion of his Request concerning scores rather than "all documents . . . relating to." (*See* R.R. at 17a, 48a.)

3

The Requester further argued that the temporary regulation did not apply because the records he had requested document the work of a committee and not an individual. The Department submitted a position statement, reiterating its grounds for denial, as well as a sworn Affidavit by Ms. Podolak which restated her account of the four-stage process in less concrete detail than her earlier testimony. (R.R. at 81a-84a.)

In April 2019, an appeals officer of the OOR issued the Final Determination, agreeing that the requested documents reflected the predecisional deliberations of the Department and were, therefore, exempt from disclosure. Requester then filed the instant petition for review.

On appeal,[6] Requester raises six issues, which may be paraphrased for the sake of conciseness as follows:[7]

> (1) Whether the Affidavit was insufficiently detailed, was conclusory, and/or was submitted in bad faith so that the averments therein should be questioned and not accepted as true.
>
> (2) Whether the preliminary score given by the evaluation committee to the application of BCI2 was not deliberative or predecisional as is meant in the context of the predecisional deliberations exemption.
>
> (3) Whether the Department failed to prove by a preponderance of the evidence that the predecisional deliberations exemption bars the release of documents responsive to the Request.

---

[6] In an appeal under the RTKL from a final determination of the OOR, the review exercised by this Court is plenary with respect to both questions of fact and law. This Court reviews the OOR's orders independently and may substitute its own findings of fact for those of the OOR. *Bowling v. Office of Open Records*, 75 A.3d 453 (Pa. 2013).

[7] For ease of discussion, we have also renumbered the issues as one through six, where Requester had listed them as issues (A) through (F).

4

(4) Whether requested documents containing both information exempted under the predecisional deliberations exemption and the score(s) given by the evaluation committee should be produced with only exempted information redacted.

(5) Whether the preliminary score given by the evaluation committee was the work of the committee as a whole, and was not an individual permit application review and/or were not notes protected from disclosure by the temporary regulation.

(6) Whether the requested documents containing both information protected from disclosure by the temporary regulation and the score given by the evaluation committee should be produced with only the protected information redacted.

(Requester's Br. at 17-18.)

**The Predecisional Deliberations Exemption**

When resolving disputes regarding the disclosure of government records under the RTKL, agencies and reviewing courts must begin from a presumption of transparency. *Am. Civil Liberties Union v. Pa. State Police*, ____ A.3d ____, ____ (Pa., No. 66 MAP 2018, filed June 16, 2020) (*ACLU*), slip op. at 2. Statutory exceptions must be construed strictly, lest they subvert the RTKL's purpose. *Id.* Section 305(a) of the RTKL provides that records in possession of a Commonwealth agency are presumed public unless they are (1) exempted by Section 708 of the RTKL; (2) protected by a privilege; or (3) exempted under any other federal or state law, regulation, or judicial order or decree. 65 P.S. § 67.305(a). Under Section 708(a)(1) of the RTKL, "[t]he burden of proving that a record of a Commonwealth agency or local agency is exempt from public access shall be on the

Commonwealth agency or local agency receiving a request by a preponderance of the evidence." 65 P.S. § 67.708(a)(1).

The RTKL's predecisional deliberations exemption provides, in relevant part, as follows:

> [T]he following are exempt from access by a requester under [the RTKL]:
>
> . . . .
>
> The internal, predecisional deliberations of an agency, its members, employees or officials or predecisional deliberations between agency members, employees or officials and members, employees or officials of another agency, including predecisional deliberations relating to a . . . contemplated or proposed policy or course of action or any research, memos or other documents used in the predecisional deliberations.

65 P.S. § 67.708(b)(10)(i)(A). Thus, in order to establish the applicability of the predecisional deliberations exception, an agency is required to show that the information is: (1) internal; (2) prior to agency decision or course of action; and (3) deliberative in character. *Twp. of Worcester v. Office of Open Records*, 129 A.3d 44, 61 (Pa. Cmwlth. 2016).

Because Requester's first three arguments involve interrelated questions concerning the adequacy of the Affidavit to establish this exemption, we address those issues together. One method an agency may use in meeting the burden of proof that a record is exempt is testimonial affidavits, which if "found to be relevant and credible may provide sufficient evidence in support of a claimed exemption." *McGowan v. Pa. Dep't of Envtl. Prot.,* 103 A.3d 374, 381 (Pa. Cmwlth. 2014) [quoting *Heavens v. Pa. Dep't of Envtl. Prot.*, 65 A.3d 1069, 1073 (Pa. Cmwlth. 2013)]. Such "affidavits must be detailed, nonconclusory, and submitted in good faith." *Office of the Governor v. Scolforo*, 65 A.3d 1095, 1103 (Pa. Cmwlth.

6

2013). In the context of the predecisional deliberations exemption, the agency's affidavit "must be specific enough to permit the OOR or this Court to ascertain how disclosure of the [record] would reflect the internal deliberations." *Id.* at 1104.

In this case, Ms. Podolak's Affidavit briefly describes the four-stage process for reviewing applications: intake, assessment, evaluation, and permitting. As stated above, of relevance to this dispute are the descriptions of the evaluation and permitting stages. According to the Affidavit, "[d]uring the evaluation phase, each evaluation committee member reviews the applications for content and quality and provides their [sic] preliminary scores" and "[a]ll work completed during the evaluation phase is used during the permitting phase." (Affidavit ¶¶ 10 and 13; R.R. at 83a.) Further, "[t]he work completed [and] the notes generated, are instructive and aids [sic] in the final review process, the permitting phase." (Affidavit ¶ 13; R.R. at 83a.) During the permitting phase, the MM Office reviews all applications and "[i]mportantly, the [MM] Office does not meet in total to review all applications and preliminary [sic] provide scores until the permitting phase. All work done by the evaluation committee during the evaluation phase is reviewed at the permitting phase." (Affidavit ¶ 16; R.R. at 83a.) "If an application is deemed incomplete[,] then any preliminary scores and notes are voided and the application is rejected." (Affidavit ¶ 17; R.R. at 84a.) Although BCI2 "received preliminary scores from each evaluation committee member, said scores were predecisional in nature. Specifically, said scores were internal to the [MM] Office as they were created by the evaluation committee before final review of all applications during the permitting phase." (Affidavit ¶ 19; R.R. at 84a.) "[T]he preliminary scores were generated before a decision needed to be made on the application" and were "created by the evaluation committee prior to the permitting phase." (Affidavit ¶ 20; R.R. at 84a.) Such preliminary scores were "unofficial" and "merely notes generated by the evaluation committee members reviewing the applications." (Affidavit ¶ 22; R.R.

7

at 84a.) In this case, BCI2's application received preliminary scores but "did not receive a final score due to their [sic] application being deemed incomplete and therefore rejected." (Affidavit ¶ 23; R.R. at 84a.)

In support of the contention that the Affidavit fails to establish that the predecisional deliberations exemption bars the release of the requested documents, Requester first argues that the sworn Affidavit submitted by Ms. Podolak was insufficiently detailed, was conclusory, and/or was not submitted in good faith. Requester focuses on alleged deficiencies in the Affidavit, including the affiant's failure to address points in her earlier testimony—primarily that in some cases she referred to a singular "score" awarded by the committee and sometimes to "scores"— and contends that the Affidavit should be questioned and discarded. As noted above, we see no significance to the references to both "scores" and "a score"; it is obvious that scores are given in various categories and combined into a total score.[8] Without a doubt, some aspects of the process remain obscure, but we do not find evidence of bad faith.

Nevertheless, we agree that the Affidavit fails to establish the elements of the predecisional deliberations exemption. "Only . . . confidential deliberations of law or policymaking, reflecting opinions, recommendations or advice [are] protected as 'deliberative.'" *Carey v. Pa. Dep't of Corr.,* 61 A.3d 367, 378 (Pa. Cmwlth. 2013). It is not disputed that the Department itself released the score sheets and final scores of dozens of other successful and unsuccessful applicants whose applications were deemed complete. (*See* "Office of Medical Marijuana Website, Posted Scores," Requester's Br. at App. C.) Thus, it is unclear how the Department can claim that such scores are confidential. In addition, to qualify to be exempted

---

[8] *See supra* note 3.

8

from disclosure, an agency must explain how the information withheld reflects or shows the deliberative process in which an agency engages during its decision-making.[9] *Twp. of Worcester*, 129 A.3d at 61. We cannot discern how the score or scores, either preliminary or final, as distinguished from the evaluation committee's notes or comments, disclose the MM Office's deliberations or deliberative process. Even if one could somehow successfully divine the deliberative process of the MM Office from the score sheet, the same would certainly be obvious from any of the dozens of other applicants' score sheets which *were* released. In sum, while the scores are internal and predecisional, they are neither confidential nor deliberative.[10]

**The Temporary Regulation**

The temporary regulation provides in relevant part:

---

[9] We note the case of *Digital-Ink, Inc. v. Department of General Services*, 923 A.2d 1262 (Pa. Cmwlth. 2007), applied the deliberative process privilege to scores and rankings of requests for proposals in the context of the procurement process. That case is readily differentiable as it was decided under the former version of the RTKL, Act of June 21, 1957, P.L. 390, *as amended*, 65 P.S. §§ 66.1-66.9, which was repealed and replaced by the current RTKL, *see* Section 3102 of the RTKL, 65 P.S. § 67.3102 (relating to repeals). Under the former RTKL, the "requesting party ha[d] the burden to establish that the documents he or she [sought] [were] public records under the RTKL." 923 A.2d at 1267 n.7. However, under the current RTKL it is presumed that a record in the possession of a Commonwealth agency is a public record, Section 305(a) of the RTKL, 65 P.S. § 67.305(a), and the *agency* seeking to withhold a document has the burden of proving by a preponderance of the evidence that it is exempt under Section 708, exempt under other Federal or state law, or protected by privilege. *W. Chester Univ. of Pa. v. Schackner*, 124 A.3d 382, 393 (Pa. Cmwlth. 2015). As we have held that the Department has not met that burden, we cannot find that the deliberative process privilege, which has been incorporated into the current RTKL as the predecisional deliberations exemption, applies.

[10] We do not believe that our Supreme Court's recent holding in *ACLU* requires that this Court engage in an *in camera* review of the documents. First, the OOR did not review the documents sought to be withheld so, unlike in *ACLU*, we have reviewed the entire record before the administrative body. Second, our holding is based on our legal conclusion that the Affidavit submitted by the Department fails to meet its burden to establish all the requirements of the claimed exemption. It is not the job of this Court to scour the withheld documents to find justification for the exemption not explained by the agency.

9

(b) The following information is considered confidential, is not subject to the [RTKL] and will not otherwise be released to a person unless pursuant to court order:

. . . .

(11) The names and any other information *relating to persons* reviewing permit applications, including a reviewer's *individual* permit application reviews and notes.

28 Pa. Code § 1141.22(b)(11) (emphasis added). Requester argues that the preliminary score assigned by the evaluation committee was the work of the evaluation committee as a whole, and did not constitute information protected by the temporary regulation. We agree.

While the individual permit application reviews and notes, and perhaps even individual evaluation committee member scores, are addressed and protected by the temporary regulation as "individual permit application reviews and notes," the temporary regulation does not extend its protections to the output of the committee as a whole.

**Remedy**

Accordingly, we reverse the Final Determination of the OOR and direct the Department to release the preliminary scores or score sheet of the evaluation committee as a whole related to BCI2's application. However, where the requested documents reflect both exempt and non-exempt information, the correct remedy is to order release of the portion of the records that are not exempt. *See* Section 706 of the RTKL, 65 P.S. § 67.706 ("The agency may not deny access to the record if the information that is not subject to access is able to be redacted."). Thus, here, to the extent the score sheet—or other records reflecting the evaluation committee's score

10

or scores—contain notes or comments in addition to the scores, such information may be redacted.

 

 

_____

**BONNIE BRIGANCE LEADBETTER,**
Senior Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Matthew Scot Payne,     :
      Petitioner :
          :
    v.      : No. 579 C.D. 2019
          :
Pennsylvania Department of Health, :
     Respondent :

## O R D E R

AND NOW, this 15th day of September, 2020, the Final Determination of the Office of Open Records is REVERSED. The Pennsylvania Department of Health is DIRECTED to release the requested documents, as redacted in accordance with the foregoing opinion.

           _____
           **BONNIE BRIGANCE LEADBETTER,**
           Senior Judge